**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE ESTATE OF MALKA "MALKI" ROTH, by and through its joint representatives ARNOLD ROTH and FRIMET ROTH; ARNOLD ROTH; and FRIMET ROTH, <br><br> Plaintiffs, <br><br> v. <br><br> AHLAM AREF AHMAD AL-TAMIMI, a/k/a "Khalti," a/k/a "Halati," <br><br> Defendant. | **CIVIL COMPLAINT** <br><br> Case No.: _____ <br><br> **JURY TRIAL DEMANDED** |

Twenty-five years ago, Malka "Malki" Roth, a fifteen-year-old American child, was murdered in an international act of terror. Her parents, Arnold and Frimet Roth, individually as surviving parents and Malki's heirs, and as joint representatives of her Estate, bring this Complaint pursuant to the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(a), against Defendant Ahlam Aref Ahmad al-Tamimi ("Defendant"), for the murder of their daughter, and allege as follows.

## PRELIMINARY STATEMENT

1. On August 9, 2001, during the lunchtime rush, a Hamas terrorist bearing an explosive device walked into the Sbarro pizzeria at the corner of King George Street and Jaffa Road in downtown Jerusalem, Israel, and detonated a bomb concealed in a guitar case. The blast murdered fifteen people and wounded approximately 122 including seven children. Two of the murdered were United States nationals. One of those victims, Malka "Malki" Roth, was just fifteen years old.

2. Before August 9, 2001, Defendant joined the military wing of Hamas, a U.S.-designated Foreign Terrorist Organization ("FTO"). Defendant surveilled downtown Jerusalem to find a target location that would maximize civilian casualties. Defendant planned the method to

1

conceal the bomb, rejecting one concealment method as too conspicuous and choosing another. On August 9, 2001, Defendant escorted the bomber from Ramallah into Jerusalem. Defendant then walked the bomber to the crowded Sbarro pizzeria and directed him to detonate the device once inside, giving Defendant time and opportunity to leave the scene and return to Ramallah. Defendant directed the bomber to detonate where it would cause the greatest carnage.

3.    Malki was in Sbarro when the bomb detonated. Malki's murder was the intended result of the operation that Defendant personally planned, guided, and set in motion.

4.    On June 22, 2003, Defendant entered a guilty plea in an Israeli court to multiple counts of murder. She was sentenced on October 23, 2003, to sixteen life terms.

5.    On October 18, 2011, Defendant was released to the Kingdom of Jordan during a deal to release terrorist prisoners in exchange for Israeli hostages. Defendant had served approximately eight years of her sentence. Defendant was bussed to Cairo, Egypt and then flown to Jordan.

6.    Since her release, Defendant has repeatedly and publicly described her role in the Sbarro attack and celebrated its lethality. Defendant has expressed no remorse.

7.    In July 2013, the United States charged Defendant with conspiring to use and using a weapon of mass destruction against U.S. nationals abroad resulting in death. *See United States v. al-Tamimi*, 1:13-MJ-00580 (D.D.C. July 15, 2013). Defendant was also placed on the FBI's Most Wanted Terrorists list. The United States continues to seek Defendant's surrender or extradition, without success.

8.    Congress enacted the ATA's civil remedy precisely for victims like Malki and families like the Roths. Section 2333(a) opens the doors of United States courts to Americans injured by acts of international terrorism, and to their estates, survivors, and heirs, and it entitles

2

them to treble damages and fees. Plaintiffs bring this action to utilize the civil remedy Congress created for victims like them and hold the direct perpetrator of Malki's murder accountable.

**JURISDICTION**

9.    This Court has subject-matter jurisdiction under 18 U.S.C. § 2338, which vests the district courts of the United States with exclusive jurisdiction over civil actions brought under the ATA, and under 28 U.S.C. § 1331, because this action arises under the laws of the United States, specifically 18 U.S.C. § 2333(a).

10.    This Court may exercise personal jurisdiction over the Defendant under Federal Rule of Civil Procedure 4(k)(2). Plaintiffs' claim arises under federal law; the Defendant is not subject to the personal jurisdiction of the courts of general jurisdiction of any State; and the exercise of jurisdiction is consistent with the United States Constitution and laws. Rule 4(k)(2) operates as a federal long-arm statute that closes the gap that would otherwise allow a foreign defendant with substantial ties to the United States as a whole, but insufficient ties to any single State, to escape jurisdiction entirely.

11.    Defendant is a Jordanian national domiciled and residing in Jordan. *See al-Tamimi*, 1:13-MJ-00580, ECF 1-1, Aff. in Support of Criminal Complaint and Arrest Warrant at 1 ("Walter Aff."), attached hereto as Exhibit 1. She is not domiciled in, "at home" in, or otherwise subject to personal jurisdiction in any State. Should Defendant contend otherwise, she must identify the State in which she is subject to jurisdiction; she may not simultaneously deny jurisdiction in every State and defeat the operation of Rule 4(k)(2).

12.    Because Plaintiffs invoke Rule 4(k)(2) in this federal action, the governing constitutional standard is the Due Process Clause of the Fifth Amendment, not the Fourteenth. The Fifth Amendment does not incorporate the Fourteenth Amendment's minimum contacts test and

instead permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader nationwide and extraterritorial sovereign authority.

13.    The exercise of jurisdiction over Defendant is reasonable and fully consistent with the Fifth Amendment. This action arises from Defendant's deliberate conduct in planning and executing an attack that murdered a United States national who remained under the protection of U.S. law while she was abroad. The United States has a compelling interest in providing American victims of international terrorism a forum in which to hold the perpetrators accountable, and Plaintiffs have a strong interest in obtaining the specific civil remedy Congress created for them.

14.    Defendant has long had fair notice that the United States has the authority to seek justice for this very attack. At the time of the bombing, federal law both authorized civil suit by United States nationals injured by international terrorism, 18 U.S.C. § 2333(a), and prohibited the use of a weapon of mass destruction against American nationals abroad, 18 U.S.C. § 2332a(a)(1). Moreover, the United States has since charged Defendant criminally in connection with the same attack with conspiring to use and actually using a weapon of mass destruction against Americans abroad resulting in death. Walter Aff., Ex. 1, ¶¶ 17–18; *see also al-Tamimi*, 13-MJ-00580, ECF 1, Criminal Complaint, attached hereto as Exhibit 2. Subjecting her to a civil action arising from the same conduct is neither unforeseeable nor unfair.

## **VENUE**

15.    Venue is proper in this District under 28 U.S.C. § 1391(c)(3), which provides that a defendant who is not resident in the United States may be sued in any district. Defendant is a Jordanian national who resides in the Kingdom of Jordan and is not a resident of the United States.

4

## PARTIES

16.     Malka "Malki" Roth was a fifteen-year-old United States national at the time of her death on August 9, 2001. She was one of two Americans killed in the Sbarro bombing. Walter Aff., Ex. 1, ¶ 15.

17.     Plaintiff the Estate of Malka "Malki" Roth is represented by Arnold and Frimet Roth, its duly appointed personal representatives. The Estate sues under 18 U.S.C. § 2333(a), which affords a cause of action to the estate of a United States national injured by an act of international terrorism.

18.     Plaintiff Arnold Roth is Malki's father. He brings this suit in his capacity as a survivor and heir of Malki who was injured by reason of the attack, and in his representative capacity on behalf of Malki's Estate, under 18 U.S.C. § 2333(a).

19.     Plaintiff Frimet Roth is Malki's mother. She brings this suit in her capacity as a survivor and heir of Malki who was injured by reason of the attack, and in her representative capacity on behalf of Malki's Estate, under 18 U.S.C. § 2333(a).

20.     Defendant Ahlam Aref Ahmad al-Tamimi, also known as "Khalti" and "Halati," is a Jordanian national domiciled and residing in Jordan. In 2001, she resided in Ramallah and the nearby village of Nabi Saleh, both located in the Judea and Samaria/West Bank region of Israel, where she attended Bir Zeit University and worked as a journalist for a television station.

## FACTUAL ALLEGATIONS

21.     Hamas has been a U.S.-designated FTO since October 8, 1997. Its military wing, the Izz al-Din al-Qassam Brigades, carries out armed attacks in furtherance of Hamas's stated goal of replacing the State of Israel with an Islamic Palestinian state.

22.     In or about June 2001, on direct invitation, Defendant joined Hamas's Izz al-Din al-Qassam Brigades and "expressed her willingness to carry out terrorist attacks on its behalf."

5

Walter Aff., Ex. 1, ¶ 6. Defendant subsequently actively sought out opportunities to commit acts of terror on Hamas's behalf.

23.     As a member of Hamas, on behalf of and in support of the FTO's goals, Defendant carried out terror attacks; performed reconnaissance; selected targets; designed, transported, and placed explosives; and ultimately placed the bomber whose blast would kill Malki. *Id.* ¶¶ 7–15.

24.     On July 30, 2001, Defendant placed an explosive device concealed in a beer can inside a supermarket in Jerusalem, Israel's capital city, which, when detonated, caused substantial property damage. *Id.* ¶¶ 9–10.

25.     In late July or early August 2001, Defendant offered to assist Hamas in carrying out another attack in Jerusalem, in which a terrorist would detonate an explosive device and use himself as a human bomb (sometimes referred to as a "suicide bomber"). *Id.* ¶ 11. She was instrumental in the initial planning of the attack, including making the decision to conceal the explosive device in a Western guitar rather than an Oud, as she believed the traditional Arab musical instrument would raise suspicion. *Id.* ¶ 12.

26.     The explosive device was built by Abdallah Barghouti, a Hamas bombmaker. The bomber selected was Izz al-Din Shuheil al-Masri.

27.     On August 9, 2001, Defendant travelled to Ramallah to meet with the bomber. Defendant then traveled by taxi to Jerusalem with the bomber and the explosive device hidden in the guitar.

28.     Defendant led the bomber, who carried the guitar case containing the explosive device on his back, to the intersection of King George Street and Jaffa Road in downtown Jerusalem, where Sbarro was located. Defendant had selected Sbarro as the target due to the substantial pedestrian traffic in and around the pizzeria. Having positioned the explosive device

and the human-bomb detonator, and provided clear instructions—including to spend a short time perusing the menu to give Defendant opportunity to leave the scene—Defendant returned to Ramallah.

29.    At approximately 1:55 PM, the terrorist detonated the explosive device. *Id.* ¶ 14. Fifteen people, including Malki, were murdered. 122 others were injured.

30.    The device in the bomber's guitar case met the definition of "destructive device." *See* 18 U.S.C. § 921(a)(4) (specifically including "explosive device" and "bomb" within the definition). As the definition of "weapon of mass destruction" encompasses "any destructive device as defined" in § 921, the device in the bomber's guitar case also met the definition of a "weapon of mass destruction." 18 U.S.C. § 2332a(c)(2).

31.    Defendant's participation in carrying out acts of terror on behalf of Hamas was deliberate, purposeful, and intentional.

32.    In the years since, Defendant has repeatedly described her role in the bombing with pride and expressed satisfaction with its results.

33.    The Izz al-Din al-Qassam Brigades, the military wing of Hamas of which Defendant was a member at the time of the attack, has published its glowing account of Defendant's participation in the Sbarro attack on its official website, describing her vital role in carrying it out.

34.    Defendant's sustained public celebration of the attack in the decades since the attack has further intensified the injury to Plaintiffs.

35.    Defendant was detained by Israeli law enforcement in September 2001. Walter Aff., Ex. 1, ¶ 16. She described her role in the Sbarro attack, as corroborated by physical and forensic evidence recovered at the scene. *Id.* She pled guilty in an Israeli court to multiple counts

of murder in the Sbarro bombing on June 22, 2003. *Id.* She was sentenced on October 23, 2003 to sixteen life terms, of which she served eight before being released in a prisoner deal. *Id.*

36.    On July 15, 2013, a criminal complaint and arrest warrant issued in the United States District Court for the District of Columbia charged the Defendant with conspiring to use and using a weapon of mass destruction against United States nationals outside the United States resulting in death, and with aiding and abetting the same, in violation of 18 U.S.C. § 2332a. The Federal Bureau of Investigation concurrently placed Defendant on its list of Most Wanted Terrorists.

37.    The United States has stated that it will persist in its efforts to obtain custody of the Defendant so that she may be held accountable for her role in the bombing.

38.    Since Defendant's 2011 release from an Israeli prison, she has served as a prominent media figure for Hamas, including hosting a weekly television program on the Hamas-affiliated Al-Quds satellite channel called "Nassim al-Ahrar" from about February 2012 through September 2016.

<u>**CAUSE OF ACTION**</u>
**Civil Liability for an Act of International Terrorism**
**(18 U.S.C. § 2333(a))**

39.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 38 above as though fully set forth herein.

40.    Section 2333(a) provides that any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

41.     Malki Roth was a national of the United States. Plaintiffs are her estate, survivors, and heirs within the meaning of 18 U.S.C. § 2333(a), and are therefore proper plaintiffs entitled to sue for the injuries caused by the act of international terrorism that killed her.

42.     An "act of international terrorism" under 18 U.S.C. § 2331(1) comprises activities that (A) involve violent acts or acts dangerous to human life that violate the criminal laws of the United States or of any State, or that would be criminal if committed within the jurisdiction of the United States or of any State; (B) appear to be intended to intimidate or coerce a civilian population, to influence the policy of a government by intimidation or coercion, or to affect the conduct of a government by mass destruction, assassination, or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States or transcend national boundaries.

43.     Defendant assisted in the concealing of an explosive device for the purpose of evading detection, placed the explosive device with the suicide bomber in a crowded location chosen to maximize carnage, and directed the detonation of the explosive device. Defendant's conduct satisfies 18 U.S.C. § 2331(1)(A).

44.     Defendant appeared to intend to intimidate and coerce a civilian population and to influence and affect the conduct of a government by intimidation, coercion, mass destruction, and assassination. Defendant acted knowingly and intentionally at every step. She became a member of the FTO Hamas for the purpose of assisting it in its goal of destroying the State of Israel. She voluntarily agreed to join the Izz al-Din al-Qassam Brigades and to carry out terror attacks on its behalf. She indeed orchestrated and carried out multiple terror attacks. She conducted reconnaissance and selected targets, deliberately selecting crowded civilian targets in the heart of Israel's capital, intentionally chosen to maximize casualties. She selected the means of concealing the Sbarro explosive device so as to avoid detection. She personally escorted the suicide bomber

to the target and expressly instructed the suicide bomber who detonated the Sbarro bomb to detonate where he would kill the greatest number of people. She has since repeatedly publicly expressed pride in and satisfaction with the results of the Sbarro attack, including the death toll. Defendant's conduct satisfies 18 U.S.C. § 2331(1)(B).

45. The Sbarro attack occurred in Jerusalem, outside of the territorial jurisdiction of the United States, and the operation transcended national boundaries in the means by which it was accomplished, in the persons it appeared intended to intimidate or coerce, and in the locale in which its perpetrators operated, satisfying 18 U.S.C. § 2331(1)(C).

46. Malki Roth, a fifteen-year-old United States national, was murdered in the Sbarro attack that Defendant planned and activated.

47. As a direct and proximate result of Defendant's conduct, Malki suffered severe bodily injury, conscious pain and suffering, and death.

48. As a direct and proximate result of Defendant's conduct, Plaintiffs Arnold and Frimet Roth have suffered severe and permanent injuries, including the permanent loss of their daughter, and the loss of her society, companionship, comfort, and support.

49. As a direct and proximate result of Defendant's conduct, Plaintiffs Arnold and Frimet Roth have suffered severe and permanent injuries, including extreme mental anguish and emotional distress that continues to this day.

50. The Estate of Malka "Malki" Roth has suffered damages including Malki's conscious pain and suffering before death and other losses to be proven at trial.

51. Malki's death and Plaintiffs' injuries were reasonably foreseeable consequences of Defendant's conduct.

52. Defendant is liable to Plaintiffs under 18 U.S.C. § 2333(a).

10

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant Tamimi as follows:

1.    Compensatory damages in an amount to be proven at trial;

2.    Threefold the damages sustained, as provided by 18 U.S.C. § 2333(a);

3.    The cost of the suit, including attorney's fees, as provided by 18 U.S.C. § 2333(a);

4.    Pre-judgment and post-judgment interest at the maximum rate allowed by law; and

5.    Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: Washington, DC
August 11, 2026

Respectfully submitted,
/s/ *Mark Goldfeder*
Mark Goldfeder
David Benger*
Lisa C. Brunner*
Rachel Sebbag*
NATIONAL JEWISH ADVOCACY CENTER
954 Airport Road Suite 1196
Atlanta, GA 30341
(332) 278-1100
mark@njaclaw.org
david@njaclaw.org
lisa@njaclaw.org
rachel@njaclaw.org

David I. Schoen (DC Bar #391408)
Schoen Law Firm, LLC
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
T. 404-365-5042
Fax. 917-591-7586
schoenlawfirm@gmail.com

*Counsel for Plaintiffs*

*pro hac vice admission pending

11